UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOVELL C. SHARPE,

        Plaintiff,

v.

UNKNOWN TYSON and
J. WINGER,

        Defendants.

_____/

Case No. 1:23-cv-117

Hon. Ray Kent

**OPINION and ORDER**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Lovell C. Sharpe, a prisoner in the custody of the Michigan Department of Corrections (MDOC). The alleged incidents occurred at the MDOC's Earnest C. Brooks Correctional Facility (LRF). Sharpe sued LRF Corrections Officer (CO) Tondalaya Tyson and LRF Assistant Deputy Warden (ADW) Jeanine Winger. The Court dismissed ADW Winger. This matter is now before the Court on CO Tyson's motion for summary judgment (ECF No. 52).

    **I.**    **Plaintiff's complaint**

Plaintiff claims that CO Tyson failed to protect him. Plaintiff's claim arose from a conversation which he had with Tyson on May 18, 2022, one day before plaintiff's cellmate (prisoner Blount) attacked him. Plaintiff's verified complaint set forth the following facts related to his claim (in his words):

> 11. On or about May 18th, 2022 the Plaintiff approached Defendant Tyson and relayed a genuine fear for his safety, that his cellmate had made direct and serious threats against him.

1

12. Plaintiff Sharpe is of advanced years, 60+, and due to the procedures implemented by [former] Defendant [ADW] Winger, was placed in a housing cell with another inmate with a violent history, and who was less than half the Plaintiffs age. . . .

14. Inmates at LRF who have imminent problems with their cell mates have 2 options, return to their cells, placing them at risk of serious danger, or refusal to lock.

15. Inmates who refuse to lock with their cell mates are issued class 2 misconducts, that result in sanctions, and are removed to segregation where they are separated from their property and forced to endure solitary confinement for up to 30 days.

16. On May 19th, 2022, the day after reporting his concerns to Defendant Tyson, the Plaintiff was violently assaulted by his cell mate.

17. The Plaintiff received extensive injuries, hit multiple times with a combination lock in the head and face resulting in several stitches in his mouth. . . .

20. Defendant Tyson's actions, and inactions directly lead to the Plaintiffs assault, and was the moving force behind the violation of his right to be free from cruel and unusual punishment.

Compl. (ECF No. 1, PageID.2-3).   Plaintiff seeks punitive damages, a declaration that "the practices and rules implemented by defendant [ADW] Winger are unconstitutional,"  and "[a] permanent injunction, requiring LRF to cease issuing misconducts for inmates attempting to remove themselves from hostile cell conditions."  PageID.4.

## II.    Motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents,  electronically  stored  information,  affidavits  or  declarations,

2

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  For purposes of this opinion, the Court notes that plaintiff filed a verified complaint. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (allegations in a verified complaint "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment." (internal quotation marks omitted).

### B.    Injunctive relief

As discussed, plaintiff seeks an injunction against LRF to cease issuing misconducts against inmates "attempting to remove themselves from hostile cell conditions" and a declaration that "the practices and rules" implemented by former defendant ADW Winger are unconstitutional.  PageID.4.  The record reflects that plaintiff has been incarcerated at the Gus Harrison Correctional Facility (ARF) since December 2025.  *See* Letter (ECF No. 65).  Plaintiff's

transfer moots his claims for injunctive and declaratory relief arising from the particular conditions of confinement at LCF. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Accordingly, these claims will be dismissed as moot. This leaves plaintiff's Eighth Amendment claim against CO Tyson as the only claim remaining in this lawsuit.

### C. Eighth Amendment claim

### 1. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions[.]" *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (internal citations and quotation marks omitted).

> The constitutional right at issue here is the Eighth Amendment's prohibition of "cruel and unusual punishments." U.S. CONST. amend. VIII. Although "prison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners," it is equally clear that not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials." *Farmer v. Brennan*, 511 U.S. 825, 833-34, 114 S.Ct.

> 1970, 128 L.Ed.2d 811 (1994) (citations and internal quotation marks omitted). For
> a failure-to-protect claim to lie against a prison official, the plaintiff must show that:
> (1) "objectively," he was "incarcerated under conditions posing a substantial risk
> of serious harm," *id*. at 834, 114 S.Ct. 1970; and (2) the official acted with
> "deliberate indifference" to inmate safety, meaning the official was "subjectively
> aware of the risk" and "fail[ed] to take reasonable measures to abate it." *Id*. at 829,
> 834, 847, 114 S.Ct. 1970[.]

*Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021).

To state an Eighth Amendment claim against a prison official for failure to protect, a prisoner must allege more than "a hypothetical risk of danger to his safety prior to the attack". *See Lewis v. McLennan*, 7 Fed. Appx. 373, 375 (6th Cir. 2001). Rather, a prisoner must allege "specific facts which would show that he was in danger of being assaulted by the other inmates." *Id*. "Generally, a single isolated attack on an inmate cannot give rise to a deliberate indifference claim because the inmate will be unable to show that officials were consciously aware of the risk of an attack." *McDuff v. Addis*, No. 1:17-cv-912, 2018 WL 3239491 at *3 (W.D. Mich. July 3, 2018).

### 2.    Evidence

Plaintiff and prisoner Blount became cellmates on April 6, 2022. *See* Lock History (Blount) (ECF No. 53-5, PageID.261). At his deposition, plaintiff stated that his memory "ain't all that great" after "being hit in the head with a rock in a sock." Sharpe Dep. (ECF No. 53-2, PageID.239). With this disclaimer, plaintiff provided the following testimony. Plaintiff and Blount were cellmates for maybe a month or two. *Id*. Plaintiff testified that things "wasn't going pretty good at all" before the May 19, 2022 attack:

> I was being disrespected. He was doing dope in the room around me and had guys
> come to the cell, which, you know, we had discussed. And like I said, it wasn't
> going good. So that's why I went and talked -- talked to Ms. Tyson, tried to get him
> moved.

*Id*. Plaintiff further explained to defendant's counsel why he felt threatened by Blount:

> Q.      What did he say to you that you felt threatened?
>
> A.      He told me that if I didn't leave him alone or if I had kept turning the lights on while he was trying to sleep, that he was going to fuck me up. Those were his exact words. And that's what happened.

*Id*. at PageID.246.

Defendant's counsel asked plaintiff about his interaction with CO Tyson before Blount attacked him. In his complaint, plaintiff alleged that he had an interaction with CO Tyson on May 18, 2022 (the day before the attack).  However, at his deposition, plaintiff testified that he had three conversations with Tyson.  *Id*. at PageID.239-240.

Plaintiff does not remember the date or the time of the first conversation with CO Tyson.  At that time plaintiff asked Tyson, "could she move my man out of my cell because we were not getting along and one of us was going to end up getting hurt."  *Id*. at PageID.242-243. Nothing happened after the first conversation.  *Id*. at PageID.243-244.

Plaintiff does not recall the date of the second conversation with CO Tyson, stating "it was very close to right after the first time."  *Id*.  When asked, "What did you say to her the second time you went?", plaintiff responded:

> It -- it was basically the same thing. Me and this guy was not getting along and we were going to get into it, basically the same thing.

*Id*.

Plaintiff did not remember the date he spoke to CO Tyson the third time, stating "[a]ll I know is it was the day before I was assaulted."  *Id*. at PageID.244-245.  When asked, "What did you say to [Tyson] the third time you went to her?", plaintiff responded:

> I asked her could -- could she moved my bunkie out of my room, out of the room because I felt like, you know, my life was going to be threatened, because he was a gang banger and I had been threatened by him and other gang bangers that was, like, coming to the room. So I had asked her that -- that third time, could she move

this guy out of the room? She told me I had to wait till next week. And then the next day, I was assaulted . . .

*Id*. (emphasis added).

Later in the deposition, defendant's counsel had plaintiff clarify the contents of the third conversation with CO Tyson:

> Q.    . . . The third time that you talked to CO Tyson, you've told me that it was the day before you were assaulted, correct?
>
> A.    Yes, I did.
>
> Q.    And that you asked her to move your bunkie out of your room; is that correct?
>
> A.    Yes, I did. I –
>
> Q.    And what else did you tell her that third time?
>
> A.    I can't remember.
>
> Q.    Is there anything else that you remember that you told her any of those three times?
>
> A.    No.

*Id*. at PageID.246.

Based on this testimony, plaintiff did not tell CO Tyson about any specific threats made by Blount.  Viewing this testimony in the light most favorable to plaintiff, at two unidentified dates prior to May 18, 2022, plaintiff made vague statements to Tyson about not getting along with Blount and asked Tyson to move Blount because "we were going to get into it" and "one of us was going to end up getting hurt."  On May 18, 2022, plaintiff asked Tyson to move Blount from the room, to which Tyson responded that plaintiff had to wait until next week.

In her declaration, CO Tyson stated that she only to spoke to plaintiff once, that being on May 18, 2022.  In May 2022, Tyson worked the 6:00 a.m. to 2:00 p.m. shift in the unit

7

where plaintiff was housed.  Tyson stated that while she spoke with plaintiff on May 18th, "he did not tell me of a genuine fear for his safety or that prisoner Blount had made any threats against him."  Tyson Decl. (ECF No. 53-4, PageID.257-258).  On that date plaintiff requested that "I reassign prisoner Blount to another cell and told me that he and prisoner Blount did not get along."  *Id*. at PageID.258.  Plaintiff "did not elaborate on this or provide further information beyond that he and prisoner Blount did not get along."  *Id*.

During their interaction, CO Tyson asked plaintiff if he was in danger:

9.      While Sharp [sic] had not provided me with any information suggesting he was in danger, out of an abundance of caution and to ensure that Sharpe was safe in his current housing assignment, I inquired whether he believed his life was in danger due to his housing assignment.

10.     Sharpe answered that he did not believe he was in danger due to his housing assignment.

11.     Further, as there was no urgency to Sharpe's request, I advised Sharpe to send a kite to his Prison Counselor, who manages housing unit reassignments. Sharpe responded that he would do so and confirmed there was no urgency to his request.

*Id*. at PageID.258.  CO Tyson stated that plaintiff "did not speak to me about prisoner Blount on any other dates other than May 18, 2022."  *Id.* at PageID.259.

CO Tyson pointed out that in accordance with MDOC Policy Directive 05.01.140 ("Prisoner Placement and Transfer" (eff. 11/01/2017)), "if I believe that a prisoner could be in danger in general population, I am required to place the prisoner in temporary segregation and initiate an investigation."  *Id.*; PD 05.01.140 ¶ T (ECF No. 53-3, PageID.252).[1]  Based on the

---

[1] Paragraph T provides as follows:

Whenever staff believe a general population prisoner may be in need of protection, or a general population prisoner requests protection, the prisoner shall be placed in temporary segregation or, if the institution does not have temporary segregation, in other suitable housing (e.g., temporary holding) within the institution to meet the prisoner's protection needs pending investigation. An investigation shall be immediately conducted and the findings documented on a Request for Protection/Investigation Report (CSJ-686). The Request for Protection/Investigation Report shall be forwarded to SCC as soon as possible but no later than seven business days after the prisoner's placement in temporary

8

information which plaintiff provided to her, Tyson did not believe plaintiff was in danger in general population, and did not know of or disregard a substantial risk of harm to plaintiff. Tyson Decl. at PageID.259.

Plaintiff's response[2] included a declaration which provided a different account of the May 18, 2022 interaction with CO Tyson stating:

> 3.      On May 18, 2022, I approached CO Tyson and explained to her that I had been threatened by my Bunkie and that we were not getting along in that cell. I said this was a serious situation. We were going to get into it.
>
> 4.      CO Tyson told me she had made her 5 cell moves for the week and that I would have to wait until next week.
> .

Sharpe Decl. (ECF No. 60-1, PageID.294).

Defendant contends that plaintiff's declaration seeks to create a genuine issue of material fact by raising different facts than his deposition testimony, *i.e.*, that plaintiff's declaration should be treated as a "sham affidavit." *See* Defendant's Reply Brief (ECF No. 62, PageID.302-303). "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). The "sham affidavit" rule can apply in two situations:

> It can apply when a witness's affidavit "directly contradicts" the witness's prior testimony. And even without a direct contradiction, it can also apply when the witness's affidavit is in tension with that prior testimony as long as the circumstances show that the party filed the affidavit merely to manufacture 'a sham fact issue.'

---

segregation or, if the institution does not have temporary segregation cells available, other suitable housing for review and determination as to further action to be taken. If SCC determines that protection is <u>not</u> needed, reasons for this finding shall be documented on the form.

[2] The Court notes that much of plaintiff's response brief (ECF No. 60)  involves his claim that defendant failed to respond to his discovery request.  The Court resolved the discovery dispute in a separate order (ECF No. 57) and then allowed plaintiff an extension of time to file his response (ECF No. 58).

*Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 842 (6th Cir. 2021) (internal

citations omitted).  As the Sixth Circuit explained:

> A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction.  If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue. A useful starting point for this inquiry is the nonexhaustive list of factors articulated by the Tenth Circuit in [*Franks v. Nimmo*, 796 F.2d 1230, 1237 (1986)], where the court noted that the existence of a sham fact issue turns on whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain.

*Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908-09 (6th Cir. 2006) (internal citations and

quotation marks omitted).

Here, plaintiff's declaration directly contradicts his deposition testimony regarding

the scope of the May 18, 2022 interaction with CO Tyson.  Plaintiff's deposition testimony

established that the May 18th interaction with CO Tyson consisted of a single question.  As

discussed, plaintiff testified that on May 18th he asked Tyson the question, "could she move this

guy out of the room?".  PageID.245.  Defendant's counsel later confirmed this testimony, *i.e.*, "you

asked her to move your bunkie out of the room; is that correct?" to which plaintiff responded "Yes,

I did."  PageID.246.  When asked, "what else did you tell her that third time", plaintiff responded

"I can't remember."  *Id*.

However, in his declaration, plaintiff changed his testimony, stating that during the

third conversation, he *did* tell CO Tyson a number of facts which would be relevant to his

constitutional claim, *i.e.*: " I had been threatened by my Bunkie"; plaintiff and his Bunkie "were

not getting along in that cell"; "this was a serious situation"; and "[w]e were going to get into it".

Sharpe Decl. at PageID.294.  Based on this record, the Court concludes that there is a direct

10

contradiction between the deposition testimony and plaintiff's declaration with respect to the scope of the May 18, 2022 conversation with CO Tyson.  Accordingly, the Court will disregard ¶¶ 3 and 4 of plaintiff's declaration.

### 3.    Discussion

#### a.    Objective element

The first consideration is whether plaintiff met the objective component of an Eighth Amendment claim, *i.e.*, was plaintiff "incarcerated under conditions posing a substantial risk of serious harm".  *See Reedy*, 988 F.3d at 912 (quoting *Farmer*, 511 U.S. at 834). *See generally*, *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("[t]he known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference").

Here, plaintiff alleged that at the time of the attack, he was over 60 years old and that Blount was less than half his age.  In addition, plaintiff stated that Blount "disrespected him", that Blount threatened to "fuck [plaintiff] up" if he did not leave Blount alone or turned on the lights while Blount was trying to sleep, and that Blount had gang connections.  Assuming that these allegations are true, plaintiff did not present evidence to demonstrate that this situation resulted in conditions which posed a substantial risk of serious harm.  There is no evidence that the age difference between plaintiff and Blount, in and of itself, posed a substantial risk of serious harm to plaintiff.  In addition, plaintiff has not presented evidence of how Blount "disrespecting" him create such a risk.  Assuming that Blount threatened plaintiff about bothering him or turning the lights on in the cell, the two prisoners did not have a previous history of violence.  Similarly, plaintiff presented no evidence to indicate that the alleged gang members who visited the cell had

a history of violence with him.[3]   In summary, plaintiff has failed to demonstrate the objective component of his Eight Amendment claim.   Accordingly, plaintiff's claim will be denied on this basis.

> **b.     Subjective element**

Plaintiff also failed to meet the subjective component of the Eighth Amendment claim, *i.e.*, that CO Tyson was subjectively aware of the risk to plaintiff and failed to take reasonable measures to abate it.  *See Reedy*, 988 F.3d at 912.   Accepting plaintiff's testimony as true, even if he spoke with Tyson three times, plaintiff did not present specific facts which would lead Tyson to believe that he faced a substantial risk of harm from prisoner Blount.  All three of plaintiff's interactions with Tyson were requests to move Blount to another cell, accompanied by vague statements such as they were not getting along, one of them was going to end up getting hurt,  and they "were going to get into it".  In summary, plaintiff's statements to Tyson did not set forth facts which showed that he was in danger of being assaulted by Blount.  *See Lewis*, 7 Fed. Appx. at 375.  Accordingly, plaintiff's claim will be denied on this basis as well.

> **c.     Summary**

Based on this record, plaintiff failed to meet either the objective or subjective element to establish his alleged Eighth Amendment claim against CO Tyson.   Accordingly, Tyson's motion for summary judgment will be granted.[4]

---

[3] *See, e.g., Hamilton v. Eleby*, 341 Fed. Appx. 168, 171 (6th Cir. 2009) (finding that plaintiff prisoner faced a substantial risk of serious harm in the general population where he received a death threat from a gang, learned that the gang had taken out a hit on him, and, that gang members previously "broke [his] face" and attempted to stab him at a different prison).

[4] The Court notes that defendant also seeks summary judgment on the affirmative defense of qualified immunity. However, defendant's brief argument merely re-states her motion for summary judgment on the merits, *i.e.*, she is entitled to qualified immunity because there was no federal constitutional violation. *See* Defendant's Brief (ECF No. 53, PageID.226-228).

### III.    Conclusion

For the reasons set forth in this opinion,

**IT IS ORDERED** that defendant CO Tyson's motion for summary judgment (ECF

No. 52) is **GRANTED** and that judgment will be entered in favor of defendants.


Dated: March 19, 2026                                    /s/ Ray Kent
                                                         RAY KENT
                                                         United States Magistrate Judge